```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK


-------------------------------X
                                :
NICHOLAS PIMENTEL,              :
                                :    17-CV-5317 (AMD)(JO)
           Plaintiff,           :
                                :    September 20, 2018
                                :
       V.                       :    Brooklyn, New York
                                :
DELTA AIRLINES, INC, et al.,    :
                                :
           Defendant.           :
-------------------------------X


      TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
          BEFORE THE HONORABLE JAMES ORENSTEIN
              UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For the Plaintiff:        JOHN LUKE, JR., ESQ.




For the Defendant:        IRA ROSENSTEIN, ESQ.


Audio Operator:


Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377



Proceedings recorded by electronic sound recording, transcript produced by transcription service

```
 1              THE CLERK:  Civil cause for status
 2   conference, Pimentel v. Delta Airlines, Inc., docket
 3   number 17-CV-5317.
 4              Will the parties please state their
 5   appearances for the record, starting with the
 6   plaintiff?
 7              MR. LUKE:  Good afternoon, your Honor.  John
 8   Luke, Junior from Slater Slater Schulman.
 9              THE COURT:  Good afternoon.
10              MR. ROSENSTEIN:  Ira Rosenstein, Morgan
11   Lewis, for the defendant.
12              THE COURT:  Good afternoon.
13              Mr. Pimentel, are you with us by telephone?
14              MR. PIMENTEL:  Yes.
15              THE COURT:  Okay.  If you have any trouble
16   hearing me or counsel, let me know.  Will you do that,
17   please?  If you have any trouble hearing me or counsel,
18   let me know.  Will you do that, please?
19              MR. PIMENTEL:  Sure.  I can hear you
20   perfectly well.
21              THE COURT:  Okay.  Mr. Pimentel, you were
22   supposed to be here in the courtroom.  I hadn't given
23   you permission to participate by telephone.  We're
24   calling up because I want to get this done but is there
25   any reason you didn't obey my order?
```

1         MR. PIMENTEL: Oh, I'm sorry, because I'm in
2 so much pain, I can't hardly walk and I can't even do
3 anything with my right arm or shoulder. I thought my
4 attorney was sending you my doctor's note that has the
5 dates on it.
6         THE COURT: You sent me your doctor's note
7 but it says you can't work. It doesn't say anything
8 about your ability to come into a courtroom and sit
9 down, which is what you were supposed to do. So going
10 forward, I just want to make sure you understand,
11 unless I tell you you don't have to be here, if you've
12 been ordered to appear at a conference, you show up.
13 If you don't, I'm going to make you show cause why I
14 shouldn't recommend that the case be dismissed for
15 failure to prosecute because you don't get to decide
16 whether you show up or not if you've been ordered to do
17 so.
18         Do you understand, sir?
19         MR. PIMENTEL: Yes, sir.
20         THE COURT: Mr. Luke, you filed some
21 correspondence between yourself and your client under
22 seal. It doesn't have any legal advice, it's just
23 sniping back and forth. I don't see any particular
24 reason why that should be under seal. Do you want to
25 explain to me why it should be?

1  MR. LUKE: Your Honor, I just thought part
2  of the rules state that -- these communications are
3  what I thought would be embarrassing for Mr. Pimentel.
4  THE COURT: They're the reason you want to
5  be relieved, right?
6  MR. LUKE: If he wants to find other
7  attorneys --
8  THE COURT: These emails are part of the
9  reason you think I should --
10 MR. LUKE: Well, yeah.
11 THE COURT: -- allow you to withdraw.
12 MR. LUKE: That's definitely part of it,
13 your Honor.
14 THE COURT: They're judicial documents. I
15 can't shield them from public scrutiny.
16 Mr. Pimentel, any reason you object to
17 having them on the public record?
18 MR. PIMENTEL: I object to having them on
19 public record because I thought I was -- attorney/
20 client privilege.
21 THE COURT: Attorney/client privilege
22 attaches to communications to get legal advice. This
23 is just you calling each other names. Any other
24 reason?
25 MR. PIMENTEL: Well, because then I think

1     MR. LUKE:  Your Honor, I just thought part
2  of the rules state that -- these communications are
3  what I thought would be embarrassing for Mr. Pimentel.
4           THE COURT:  They're the reason you want to
5  be relieved, right?
6           MR. LUKE:  If he wants to find other
7  attorneys --
8           THE COURT:  These emails are part of the
9  reason you think I should --
10          MR. LUKE:  Well, yeah.
11          THE COURT:  -- allow you to withdraw.
12          MR. LUKE:  That's definitely part of it,
13 your Honor.
14          THE COURT:  They're judicial documents.  I
15 can't shield them from public scrutiny.
16          Mr. Pimentel, any reason you object to
17 having them on the public record?
18          MR. PIMENTEL:  I object to having them on
19 public record because I thought I was -- attorney/
20 client privilege.
21          THE COURT:  Attorney/client privilege
22 attaches to communications to get legal advice.  This
23 is just you calling each other names.  Any other
24 reason?
25          MR. PIMENTEL:  Well, because then I think

```
 1   that it would prejudice my case.
 2              THE COURT:  How so?  How would it prejudice
 3   your case that you're saying you abhor Mr. Luke or he
 4   calls you a name?  How is that going to prejudice your
 5   case?
 6              MR. PIMENTEL:  Because like for example,
 7   although I don't want to separate from Mr. Luke, I
 8   would never be able to find another lawyer again.
 9              THE COURT:  Well, I don't know if you're
10   going to need to.  That's a separate issue, but it
11   won't prejudice your case.  It may prejudice your
12   ability to find another lawyer but frankly, I don't
13   think it would have any impact on that beyond what the
14   public record already reveals.  If there's another
15   reason, I'll certainly hear you.
16              MR. PIMENTEL:  No, there's no other reason.
17              THE COURT:  Okay, then I'm going to order
18   the filing to be unsealed.
19              Mr. Luke, the correspondence makes it clear
20   that your client doesn't want you to be relieved.
21   You've obviously had some tension along the way, but
22   especially if you're saying he will work with you, why
23   can't you work with him?
24              MR. LUKE:  Your Honor, the emails actually
25   say that he's looking for -- that he's found new
```

```
 1   attorneys, that he doesn't want me to be his attorney
 2   anymore.  He has --
 3            THE COURT:  Mr. Luke, you and I read the
 4   same emails.
 5            MR. LUKE:  Yes, your Honor.
 6            THE COURT:  So I know what they say.
 7   Frankly, your characterization leaves out later
 8   statements that he does want you to continue.
 9            MR. LUKE:  Your Honor, this has been going
10   on since August 9th, so Mr. Pimentel first tells me that
11   he wants me to leave, I disgust him, he abhors me.
12   Then when I finally decided okay, fine, you don't want
13   me, we're going to withdraw, then I guess he realized
14   the difficulty of finding another attorney.  Now I'm
15   getting, why can't we work together.
16            THE COURT:  Right, so now he's seen the
17   light.  Why don't you --
18            MR. LUKE:  I don't -- your Honor, there's no
19   trust left in this relationship.  He ebbs and flows
20   like this all the time.  One day he's very contrite,
21   like in that letter to you.  Then two seconds later,
22   he's just very abusive.  He has sent letters, emails to
23   my --
24            THE COURT:  "I abhor you" is unfortunate but
25   it's not abusive.
```

1  MR. LUKE: "You disgust me," your Honor?
2  THE COURT: You know what? Lawyers get
3  upset with their -- sorry, clients get upset with their
4  lawyers. You know, you and I have seen a lot worse.
5  MR. LUKE: Your Honor, if I may. He's
6  also --
7  THE COURT: If you're not going to let me go
8  on, I guess I must.
9  MR. LUKE: I'm sorry.
10 THE COURT: No, go ahead, please.
11 MR. LUKE: He's also sent emails to my
12 bosses about how I set him up by getting a lien on his
13 case from the last firm and that I have no credibility,
14 no ethics. My job -- this started on July 9th. Every
15 week, there was another email from Mr. Pimentel that
16 exposes some new liability for them. He sent emails to
17 my former boss as well, in the same tone. There's been
18 no end. Then when he wants help, he's very nice,
19 because I've continued to provide discovery during the
20 time period so that his case would not be stalled.
21 He's nice one minute and then the next minute, again,
22 he's spouting this thing about how I don't want to
23 knowledge anything about his case.
24 THE COURT: All right.
25 MR. LUKE: It's been going on and on and on.

```
 1  It's causing a lot of stress.
 2              THE COURT:  Stop, please.  Have a seat.
 3              Mr. Pimentel, do you want a lawyer or not?
 4              MR. PIMENTEL:  I'm sorry, what did you say?
 5  Am I a lawyer?
 6              THE COURT:  Do you want a lawyer or not?
 7              MR. PIMENTEL:  I need a lawyer.  I do want a
 8  lawyer, yes, sir.
 9              THE COURT:  Right now, the only lawyer
10  you've got and the only lawyer I imagine you are likely
11  to get is Mr. Luke.  He will represent you zealously,
12  I'm sure, but you can't expect him to put up with the
13  kind of communications I've seen from you.  Now, in
14  your most recent submission to me, you've put in some
15  later communications.  It seems to me that you've seen
16  the light.
17              Am I correct in assuming that, should I deny
18  the motion to withdraw, Mr. Luke is never going to have
19  occasion to come back and ask me to reconsider based
20  upon further abusive language that you've put in
21  emails?  Is that a fair assumption?
22              MR. PIMENTEL:  Yes.  I mean, I would never
23  call him lazy again or call him incompetent, and I did
24  apologize for that several times.
25              THE COURT:  Just so it's clear, Mr.
```

```
 1  Pimentel, I'm not talking about specific words.  You
 2  want him to be you lawyer, you cooperate with him.
 3            MR. PIMENTEL:  Sure.
 4            THE COURT:  Mr. Luke, you have a
 5  professional obligation to do your best for him.
 6            Mr. Pimentel, he doesn't have to be at your
 7  beck and call.  He has to communicate with you in a
 8  reasonable fashion.  As to who goes where for a
 9  conference, I'm not going to -- whether Mr. Pimentel
10  goes to counsel's office or counsel meets Mr. Pimentel
11  somewhere else or how quickly you respond to emails and
12  calls, I'm not going to get down in the weeds with
13  that.  If I see you sniping back and forth about each
14  other, I'll try and figure out who's starting it.  If
15  it's Mr. Luke, he'll have to stick with the case.  If
16  it's Mr. Pimentel, you're going to lose your lawyer.
17            MR. PIMENTEL:  Okay.
18            THE COURT:  So I'm asking both of you and
19  advising both of you to have a thicker skin and to
20  cooperate with each other.
21            Mr. Pimentel, cut out the name calling
22  because the next time I see it of any kind, you're
23  going to be without a lawyer.
24            MR. PIMENTEL:  I understand.
25            THE COURT:  Understand?
```

```
 1              MR. PIMENTEL:  I understand, your Honor,
 2   thank you.
 3              MR. LUKE:  Your Honor, if I may?
 4              THE COURT:  Yes.
 5              MR. LUKE:  Could we also ask that he stop
 6   emailing my entire firm and stop emailing outside
 7   counsel who have nothing to do with this lawsuit?
 8              THE COURT:  Well, I'm not going to say who
 9   he -- look, the firm represents him.
10              MR. LUKE:  Right.
11              THE COURT:  Mr. Pimentel, you're not doing
12   yourself any favors by talking to people other than Mr.
13   Luke.  In terms of emailing opposing counsel, I
14   strongly recommend against that.  I can't tell you not
15   to do it but you've got to understand, Mr. Rosenstein
16   won't respond to you.  He can't as a matter of legal
17   ethics.  As long as you've got a lawyer and you say you
18   want one, your lawyer does your speaking for you in
19   court and with opposing counsel.  So you are -- the
20   only person you are hurting when you communicate with
21   opposing counsel while you've got a lawyer is you.
22              MR. PIMENTEL:  I understand.
23              THE COURT:  Because you're either going to
24   say something that hurts your case, which opposing
25   counsel will be absolutely free to use against you, or
```

```
 1   you will make it so impossible for your own lawyer to
 2   work with you that I'm going to let him out of the
 3   case, so cut it out.  You think you've got a case
 4   against the defendant?  Do what you can to prosecute
 5   it.  That means working with a lawyer.  You're lucky to
 6   have one and it's unlikely, as you say, that you'll be
 7   able to find another if Mr. Luke withdraws.  I'm not
 8   granting the motion to withdraw now but I'm not going
 9   to have a whole lot of patience for further shenanigans
10   like this, got it?
11              MR. PIMENTEL:  Yes, sir.
12              Mr. Luke, thank you and you know that we
13   always got along very well, and I hope we can continue
14   that.
15              THE COURT:  While I've got you here, any
16   discovery issues that we've got?
17              MR. ROSENSTEIN:  Yes, your Honor.
18              THE COURT:  Mr. Rosenstein?
19              MR. ROSENSTEIN:  If I can be heard very
20   quickly.  One of the issues that we've had in discovery
21   was getting Mr. Pimentel to agree to a stipulation of
22   confidentiality for production of documents and some
23   form of protective order.  We drafted a fairly standard
24   protective order.  Counsel didn't express any comments
25   about the document but said that Mr. Pimentel would not
```

```
 1   allow him to agree to confidentiality before production
 2   of documents.  We could file a motion for a protective
 3   order to you and have you consider that.
 4               THE COURT:  Of course.
 5               MR. ROSENSTEIN:  I also have a copy that I
 6   brought.  I didn't know because of the --
 7               THE COURT:  Look, you have an obligation to
 8   produce the documents.
 9               MR. ROSENSTEIN:  Right.
10               THE COURT:  If you think you're entitled to
11   protection, move for protection.  If you can get an
12   agreement, fine.  They don't have to agree.
13               MR. ROSENSTEIN:  Right.  That's an issue
14   that I wanted to raise.  We'll be filing a motion for a
15   protective order unless, based on what's happened
16   today, Mr. Luke --
17               THE COURT:  Right, but keep in mind, if it
18   appears to me obvious that protection is warranted,
19   some form of confidentiality, and the defendants are
20   forced to make a motion and incur the expenses of
21   motion practice to get what any lawyer would recognize
22   would be warranted, I'll require the losing party on
23   that motion to pay costs, as I can and will and should
24   under Rule 37.
25               I don't want to get into who is responsible
```

```
 1  for a decision on one side of the case or the other, as
 2  between counsel and client.  It's not business who's
 3  responsible for the decision.  But, Mr. Pimentel, this
 4  is something where you might well want to listen with
 5  an open mind to what your lawyer has to say because I
 6  sign agreed-on protective orders all the time.  But if
 7  there's no agreement, Delta can certainly make a motion
 8  for it.  If they're entitled to it and they shouldn't
 9  have had to bother making the motion, you might end up
10  paying for that.
11            MR. ROSENSTEIN:  Thank you, your Honor.  The
12  only other issue is depositions.  Mr. Azarmi's (ph)
13  deposition had been scheduled.  Because of the
14  uncertainty of his representation, he wrote directly --
15  I think yesterday he wrote over the holiday and said
16  that he was not going to be able to appear for that
17  deposition.  I sent that directly to Mr. Luke, who
18  responded right away.
19            THE COURT:  When was it scheduled for?
20            MR. ROSENSTEIN:  It was scheduled for next
21  week.
22            MR. LUKE:  The 27th.
23            THE COURT:  Any reason it can't go forward?
24            MR. ROSENSTEIN:  Well, Mr. Pimentel says
25  that he is not able to appear because of his physical
```

```
 1  infirmity.
 2              THE COURT:  I don't see any reason why he
 3  can't sit --
 4              Where are you sitting right now, Mr.
 5  Pimentel?  Where are you right now, sir?
 6              MR. PIMENTEL:  I'm listening.
 7              THE COURT:  Where are you right now?
 8              MR. PIMENTEL:  Here in New York, New York
 9  City.
10              THE COURT:  Where, in your home?
11              MR. PIMENTEL:  Yes, yes, I'm home in
12  Manhattan.
13              THE COURT:  Okay.  I hope you're feeling
14  better by next week.  You've got a deposition to go to.
15  If your doctor gives me a reason to think that you
16  can't actually travel to some other place and answer
17  questions, I'll consider that.  But if you don't show
18  up for your deposition when you're supposed to, again,
19  you're taking a risk that it's really going to harm
20  your case.
21              MR. PIMENTEL:  Can I ask one question?
22              THE COURT:  Of course.
23              MR. PIMENTEL:  Okay.  So I guess one of the
24  problems was, I was supposed to -- I think it got moved
25  but on 9/25, I was supposed to have a conference with
```

```
 1  the Honorable Judge Weinstein but that got moved to
 2  October.  So the problem was that I have to -- Mr. Luke
 3  and I have to get together and he had never scheduled a
 4  time to get together before the 27th, so I just need to
 5  meet with him first.
 6              THE COURT:  Well --
 7              MR. ROSENSTEIN:  Your Honor, if I may.
 8              THE COURT:  Yeah.
 9              MR. ROSENSTEIN:  Mr. Luke has been nothing
10  but courteous and professional to me throughout this
11  case and other cases we've had.  I'm absolutely willing
12  to schedule the deposition at a time that is convenient
13  for him.
14              THE COURT:  That's fine.  Whatever you work
15  out is fine with me.
16              MR. ROSENSTEIN:  Obviously, we don't want to
17  delay discovery because you've made it clear that
18  you're not inclined to expand the discovery period in
19  this case.
20              THE COURT:  I'm not.  You have until January
21  7th to finish all discovery.
22              MR. ROSENSTEIN:  There are other concerns I
23  have about the discovery that -- not the requests yet
24  but the question of what depositions Mr. Luke would be
25  seeking in this case.  I anticipate that there may be
```

```
 1  the need to bring that to the Court's attention, both
 2  in terms of the number of depositions asked and the
 3  location of the depositions.  I think there's been an
 4  indication of something in the neighborhood of thirty
 5  to forty human beings.
 6           THE COURT:  Depositions?  No, there
 7  certainly will not be.
 8           Mr. Luke, if you're just doing the things
 9  that your client says to do, you know -- I'm confident
10  you know that that's not your role.  You have some
11  discretion to exercise but whether it's coming from
12  counsel or client, I want everybody to understand that
13  there will not be thirty or forty depositions in this
14  case.  There should not be.  If I need to resolve a
15  motion because one side is insisting on far too many
16  depositions, I'll resolve the motion.
17           MR. ROSENSTEIN:  Thank you, your Honor.
18           MR. LUKE:  Thank you, your Honor.
19           THE COURT:  Work out the deposition
20  schedule.  Whatever you guys work out is fine with me
21  as long as all discovery is done by January 7$^{th}$.
22  Anything else for today, folks?
23           MR. LUKE:  Not from the plaintiff, your
24  Honor.
25           MR. ROSENSTEIN:  Thank you, your Honor.
```

1     MR. PIMENTEL:  Thank you.
2     THE COURT:  Mr. Pimentel, anything from you?
3     MR. PIMENTEL:  No, thank you, your Honor.
4     THE COURT:  Thank you all.  Have a very good
5 day.
6                  * * * * * * *

18     I certify that the foregoing is a correct
19 transcript from the electronic sound recording of the
20 proceedings in the above-entitled matter.

23 *[signature]*

25 ELIZABETH BARRON                    December 18, 2018