1  UNITED STATES DISTRICT COURT

2  EASTERN DISTRICT OF NEW YORK

3  ----------------------------------------x

4  NICHOLAS PIMENTAL, a/k/a AASIR AZZARMI,

5                      Plaintiff,

6        versus                        17 CV 5317 (AMD)

7  DELTA AIRLINES, INC., TANYA MORGAN,
   individually, SERGEY YEREMEYEV,
8  individually,
                                        U.S. Courthouse
9                    Defendants.        Brooklyn, New York

10 ----------------------------------------x

11 NICHOLAS PIMENTAL, a/k/a AASIR AZZARMI,
   individually and on behalf of all other
12 persons similarly situated,

13                    Plaintiffs,       18 CV 2999 (AMD)

14        versus

15 DELTA AIRLINES, INC. and any other
   related entities,
16                                      U.S. Courthouse
                     Defendants.        Brooklyn, New York
17 ----------------------------------------x
                                        February 7, 2019
18                                      1:00 p.m.

19

20        Transcript of Civil Cause for Status Conference

21 Before:     HONORABLE ANN M. DONNELLY,
                         District Court Judge
22

23                      APPEARANCES

24 Pro Se Plaintiff:
   NICHOLAS PIMENTAL
25

Pimental v. Delta

1    Appearances (continuing):

2    Attorney for Defendant:
     MORGAN, LEWIS & BOCKIUS, LLP
3    101 Park Avenue
     New York, New York 10178
4    BY:  BRENDAN T. KILLEEN, ESQ.
          HANNA E. MARTIN, ESQ.
5
     Official Court Reporter:
6    MICHELE NARDONE, CSR
     Phone:  718-613-2601
7    Email:  Mishrpr@aol.com

8    Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Pimental v. Delta

1          (In open court.)

2          THE CLERK:  All rise.

3          THE COURT:  Everybody can have a seat.

4          THE CLERK:  This is civil cause for a status

5    conference, docket number 17 CV 5317 and 18 CV 2999, Pimental

6    versus Delta Airlines, Inc.

7          Counsel, parties, state your appearance, plaintiff

8    first.

9          MR. PIMENTAL:  Aasir Azzarmi, present.

10          MR. KILLEEN:  Brendan Killeen and Hanna Martin, from

11    Morgan, Lewis & Bockius, on behalf of the defendant.

12          THE COURT:  A couple of things.  Our court reporter is

13    taking down everything that everybody says.  If you talk too

14    fast or interrupt, then it makes her job harder.  So I'm going

15    to ask everybody to keep that in mind.

16          We are going to talk about both of these cases

17    together.  I'm just going to run through what I think is

18    outstanding in some of these matters.

19          A couple of just housekeeping things.  You know, we

20    have you as Mr. Pimental.  Is it okay if I call you that?

21          MR. PIMENTAL:  Sure, of course; and I think maybe if

22    there was ever a trial, some of my coworkers would probably

23    know me as Pimental.  So that would probably be better for

24    corporate.

25          THE COURT:  Okay.  Do me a favor.  Pull the microphone

1  a little bit closer to you.

2      So if that's okay, that's what we will call you.

3      Your mail keeps getting returned.  I know there is

4  something recently that was filed.  Do we have that

5  straightened out now?

6      MR. PIMENTAL:  Actually, I have to go to the post

7  office after this because what I think it is is that perhaps

8  the court is sending it under Pimental, and that's not where

9  it's maybe logged.  I don't know why they are not depositing it

10  in my box; but I will find out today, and I will bring the

11  results in to the clerk's office because I think that people

12  think that I never paid for this post office box.

13      THE COURT:  Just let us know, because I want to make

14  sure that you are getting whatever is being sent to you.  Okay.

15      So a couple of things.  I have lost count of how many

16  motions you have filed, Mr. Pimental, and I am very interested

17  in both of your claims.  If you keep filing long, long things,

18  it distracts from me being able to focus on the essence of your

19  claim.  I know most of this stems from the fact that you aren't

20  a lawyer; and, believe me, having been through law school, it's

21  not easy to keep up with all of these things.

22      I'm just going to go through a couple of things that

23  might make this a bit easier for everybody.  The other thing,

24  though, at the outset, you have to stop insulting Judge

25  Orenstein.  He is not going to get off the case.  He is an

1 excellent judge, and he is paying careful, careful attention to

2 your case. So, you know, we can't all be thrilled, you know,

3 you are probably not going to get rid of me either. So, you

4 know, into each life a little rain must fall; but you are stuck

5 with me, and you are lucky to have Judge Orenstein. He is a

6 very smart person and he is giving very careful attention to

7 all of your concerns.

8        So, but you just have to -- I'm not going to pay any

9 attention to it. It's just really, really not appropriate. So

10 that has to stop.

11        If you file something that has some sensitive stuff in

12 it -- you know, there are some images there with some bad

13 language, things that discuss sexual matters and things like

14 that -- you have to let us know that that should be filed under

15 seal, because there are privacy interests of concern here. So,

16 please, if that's going to happen, just let us know it should

17 be under seal.

18        Then, finally, I don't know if you are aware that each

19 one of the judges here has individual practices and rules. All

20 right.

21        Do you have a copy of mine?

22        MR. PIMENTAL: Uh-huh.

23        THE COURT: Okay. So they are mostly just to help me

24 so I can keep track of everything that's happening. I have

25 page limitations on motions, and you can't fax things to

1    chambers unless you get permission to do it.  That's not to be

2    difficult or bossy or anything like that.  Those rules make --

3    you know, I have a lot of cases, and those rules make sure that

4    I can handle those cases efficiently.

5          So what I'm going to do now is just go through some of

6    these motions that have been filed; and, if I'm forgetting

7    some, I think you will let me know.

8          There are a number of motions for judicial notice.

9    There are at least nine of them.  So the thing about judicial

10   notice, a lot of times you are asking me to take judicial

11   notice of cases and things like that.  You don't have to do

12   that.  When you file whatever substantive motions you file,

13   which will be filed at the appropriate time, you can just cite

14   the cases in your brief.  You don't have to -- that's not what

15   judicial notice is for.

16         Judicial notice is for things like if you are in a

17   trial and somebody wants you to take judicial notice that on

18   January 1 the temperature was, you know, 30 degrees.  That's

19   what judicial notice is.  Citing cases, which is something that

20   everybody does when they file a kind of a brief or something,

21   you don't have to ask me to take judicial notice of that.

22         Just when we get to the point where we are doing

23   motions, summary judgment, when you file your brief, you can

24   just cite the cases; and therein I will surely read them.

25         So those motions for judicial notice I'm denying, just

1  because they don't mean anything on their own.

2  Now, you also ask that I transfer this case to the

3  Southern District.  The first question I have is -- you say you

4  have a lawyer that will represent you in the Southern District

5  but not here -- why can't that person represent you here?

6  MR. PIMENTAL:  I'm not sure, but he said he is

7  registered in SDNY; and when I asked him, well, I'm EDNY, he

8  told me to come there.  I don't know if at one point I did see

9  a sign in the clerk's office and it said maybe at the time or

10 something, it was October, there was -- they weren't taking

11 applications or something.  I don't know.

12 THE COURT:  Well, I mean, I'm not a hundred percent

13 sure what the lawyer's concerns are, but even if you are not

14 admitted here, if you are admitted to practice in the Southern

15 District, you can ask to get admitted here.  It's called

16 pro hac vice, and you file an application; and I'm sure the

17 lawyer knows this.  All the lawyer would have to do is file

18 this application that shows that they are a lawyer in good

19 standing in some other place.

20 So because, otherwise, there is really no reason to

21 switch the case.  The main reason, really, for you, is that I

22 have had the case for a while.  I'm pretty familiar with it.

23 And Judge Orenstein has had it for a while.  If this were to

24 get switched to another judge, they would have to start all

25 over from ground zero; and it would take that much longer for

Pimental v. Delta

1    your case to get resolved, for your two cases to get resolved.

2    So I'm going to deny the motion to change venue.

3            But I encourage you to speak to the lawyer about

4    whether or not he would, he or she, would be willing to appear

5    pro hac vice here or whatever the issue is.

6            Have you spoken to that lawyer recently?

7            MR. PIMENTAL:  No.  He told me to call him when I get

8    the change of motion, change of venue motion approved.

9            But, Your Honor, what I'm trying to say is, of course

10   there are other factors that I'm sure maybe I probably

11   mentioned; and it's not me that's judge shopping, but lawyers,

12   when you already have certain judges assigned, sometimes they

13   don't like their individual practice rules.  And so, you know,

14   when it's -- they -- when you are already in the situation,

15   they can pick things, what they like, what they don't like.

16           THE COURT:  But they don't have any control over who

17   gets the case.  So, I mean, Judge Weinstein asked me to take

18   your other case because it's connected.  So I agreed to do that

19   for Judge Weinstein.

20           But when you file a case here, it goes into a wheel,

21   and it just gets assigned to a district judge and to a

22   magistrate judge.  That's just how it works.  We have too many

23   cases to try to pick and choose.  So we don't do it, but a

24   litigant surely could never engineer it so that they get their

25   case assigned; and I don't think these folks would have picked

MICHELE NARDONE, CSR -- Official Court Reporter

1  me anyway.  We don't know each other.

2       So, anyway, so I mean I hate to give you the bad news.

3  I know you said in one of your submissions you really like

4  Judge Block, but he is not available.  So you are stuck with

5  me.  He is a good judge, but you are stuck with me.  I'm sorry

6  about that.  So we are not going to -- we won't be changing

7  venue.  All right.

8       Now, there is another motion that you filed -- and

9  just forgive me for this; I'm really just trying to keep myself

10  organized -- that you wanted me to deem -- it was about your

11  56.1 statement that you submitted.  Because I denied your

12  summary judgment motion without prejudice, just because we are

13  not at that stage of the proceedings where it's appropriate.

14  So they don't have to answer your 56.1 statement yet.  So that

15  motion is also denied.

16       I think -- I get the feeling that you understand the

17  issue with the summary judgment.  Just the way the rules work,

18  we don't -- a summary judgment motion is not decided until all

19  of the discovery is done, and the reason for that is that the

20  standard in summary judgment is that you can only grant the

21  motion if the two of you don't have any factual disputes about

22  something.  Since you haven't finished finding out what the

23  facts are, you can't do it yet.  So it's a waste of your time.

24  So that's why.

25       It's not because I don't want to consider it.  It's

1    just that it's just not time to do that.  So all of those

2    things with respect to summary judgment, we are just not there

3    yet.  So anything having to do with the summary judgment, it's

4    just premature.

5            I think we already talked a little bit about Judge

6    Orenstein.  You know, you are awfully hard on him, but he

7    really has been giving careful, as I said, really careful

8    consideration to your case; and so, you know, I'm not going to

9    review his orders.  He is smarter than I am.  So I'm not

10   reviewing any of his discovery orders.  They are all correct.

11           He did ask you to prepare a narrative statement.  You

12   have to do that.  That is something that we do in pro se cases

13   because sometimes, as I'm sure you have experienced, because

14   you are not a lawyer, it gives the judge a better chance of --

15   a better understanding of what it is you are actually claiming.

16   Sometimes you may think your claim falls under one type of law,

17   but a judge will look at it and -- what we do when people file

18   pro se submissions is that we give it the most liberal

19   interpretation possible.

20           So if you are claiming that something happened and I

21   look at it and I think, wow, that doesn't really seem like it's

22   under this statute, it seems more appropriate under this

23   statute, I will construe that just generously to think that's

24   what you mean.  This is a help for you.  That's why we do that

25   in pro se cases.  I'm not trying to make your life difficult.

1    Now, it's true -- you know, and any lawyer will tell

2    you this -- that sometimes the judge is going to agree with

3    you, sometimes the judge is not going to agree with you.  We

4    just do our best to interpret the law as we understand it.  It

5    doesn't mean that, you know, we have something personal against

6    you or anything like that.  Not at all.

7    I mean, we are very accustomed to having people here

8    represent themselves; and I know that it's not easy for

9    somebody who is not a lawyer to find his way through what can

10   be a pretty complicated situation.

11   So I have sort of spoken generally about your case.  I

12   was really focusing on the gender discrimination case.

13   Then, the case that Judge Weinstein had before, I

14   think you understand this, but just correct me if I'm wrong.

15   Because you are representing yourself, it can't be a class

16   action.  I think it's not allowed.  I think I -- in one of your

17   submissions, I recognized that you understood that; and so it

18   can't be a class action.

19   The person who you consulted about representing you on

20   the other case, would that person also be willing to represent

21   you on the case, the New York Labor Law case, the overtime

22   case?  Do you think that person would represent you on both

23   cases?

24   MR. PIMENTAL:  No, Your Honor.  If I could have 30

25   seconds.

1          THE COURT:  Sure, but have mercy on our court

2    reporter.  So just talk slowly.  All right.

3          MR. PIMENTAL:  Sorry.  I'm working with the airlines

4    and in New York we talk fast.

5          Basically a lot of time the class actions lawyers are

6    different from the employment discrimination lawyers, and that

7    was maybe one of the issues with my first lawyers.  They never

8    did class actions.

9          THE COURT:  Right.

10          MR. PIMENTAL:  They were forcing me to settle,

11    because, of course, it was advantageous for them to get a part

12    of that settlement; but I didn't want to abandon the class, and

13    I still don't want to abandon the class, which is why I need a

14    lawyer.  So, Your Honor, I don't want -- because it's not just

15    about me because these issues are still going on, which is why

16    I asked for the permanent injunction or temporary, whatever the

17    court is willing to provide.

18          So, Your Honor, what I'm asking, maybe because it's

19    not about me.  I mean, I could have taken the $5,000.  I didn't

20    want to do that because I don't want to abandon my colleagues,

21    who I promised I was going to try to do this for a lot of

22    people.

23          THE COURT:  Right.

24          MR. PIMENTAL:  So if you say something, you have to be

25    strong in your convictions and try to do that.  So I think I

1   would -- now that it got reassigned, it's not so easy for me to

2   find a lawyer.  But I still would like to try to do that

3   because I don't want to abandon the class again still.

4           THE COURT:  So I know you have had kind of a breakdown

5   in the relationship -- you had two lawyers on this before,

6   right, or am I mixing up my cases?

7           MR. PIMENTAL:  On the class action?

8           THE COURT:  Yes.

9           MR. PIMENTAL:  Yeah, because the first ones, they

10  never did class actions.  They only started it because they

11  wanted like a quick settlement.  So it was just like when I

12  didn't settle, there was some tension there, whatever, and we

13  parted ways.  And so I had to find -- they wanted me to find a

14  new class action lawyer anyway, because they weren't

15  experienced with that, if it was to go forward.

16          So I did have another lawyer after that.  Once again,

17  when I didn't settle because I didn't want to abandon the

18  class, there was more problems, which is where I'm at now; and

19  now I want to get a lawyer to represent the class.

20          THE COURT:  All right.  So you are still working on

21  that?

22          MR. PIMENTAL:  Well, I think --

23          THE COURT:  You want me to appoint one?  Because we

24  can't do that.

25          MR. PIMENTAL:  I would love that.

1      THE COURT:  I know, but that's not the way it works.

2      MR. PIMENTAL:  I understand, Your Honor; but is it

3  possible -- I think Magistrate Levy, who I never met, and I

4  never met Judge Weinstein, and because my lawyer showed up

5  because so I never met them or disliked them, because I never

6  met them.

7      THE COURT:  They are both wonderful.

8      MR. PIMENTAL:  I will take your word for it.

9      When I found out I was abandoned because I settled,

10  because like PACER, when something happens, I don't get an

11  e-mail because I was never pro se.  So I didn't know what was

12  going on.

13      So when I found out from the pro se lawyer and the

14  office here at EDNY that this was happening, I went to the

15  clerk's office.  I wrote a letter asking Magistrate Levy, who

16  was very kind and gave me until the 15th of this month to find

17  a lawyer.

18      THE COURT:  Right.

19      MR. PIMENTAL:  Since that time is expiring and I

20  didn't know it got reassigned to a different judge, and then

21  the lawyer that was interested told me he is not interested,

22  and now here we are.

23      THE COURT:  I will give you some more time, if that's

24  what you want.

25      MR. PIMENTAL:  Okay.

MICHELE NARDONE, CSR -- Official Court Reporter

Pimental v. Delta

1    THE COURT:  I think -- I can't remember exactly how

2  this happened, but, you know, if Judge Weinstein asks me to do

3  something on a case I almost always say yes.  So I think he saw

4  that we had this and that we should handle both of them.  It

5  does make some sense, because it's the same lawyers on the

6  other side, and it involves some of the same group of people.

7  So if Judge Weinstein asked me to do him a favor on a case, I

8  will definitely do it.

9    You know, I'm not as smart as he is, but I care about

10  your case.  So that should be fine.  So let's give you --

11  that's one thing we can get done today.  Why don't we give

12  you -- you want to say until the middle of March, to try to

13  find a lawyer?

14    MR. PIMENTAL:  Of course.  Do I have any say in that

15  matter?

16    THE COURT:  If you feel like you need a little more

17  time -- you are not going to oppose that, are you?

18    MR. KILLEEN:  No, Your Honor.

19    THE COURT:  Okay.  So do you want some more time?  Do

20  you want to try the beginning of April?

21    MR. PIMENTAL:  Okay.  But --

22    THE COURT:  The only other thing I'm going to suggest

23  to you, just having done this for a number of years here and

24  other places, you know, you can get so wrapped up in your case

25  that you can't think of anything else and that you start

1  thinking that everybody is against you and that if they don't

2  see things your way that they must be conspiring against you.

3        Sometimes people are against you, but sometimes they

4  are not; and it's possible that these lawyers that you have had

5  before are just trying to give you their best judgment.  You

6  may not agree with it, but that doesn't necessarily mean that

7  somebody is trying to do something tricky to you.

8        So I would just encourage you, when you are thinking

9  about this case, to not immediately jump to the conclusion that

10  somebody is trying to cheat you.  Because it's really -- at

11  least insofar as Judge Orenstein and I are concerned, we

12  wouldn't be -- we wouldn't have these jobs if that's what we

13  wanted to do.  The reason you take this job is to try to -- one

14  reason, is to try to help people work out their differences.

15        So I know that you were quite adamant in rejecting the

16  settlement, but you may want to think about it, assuming that

17  it's still even on the table, for the labor law case.  I'm not

18  going to ask you to tell me that now, but, you know, maybe -- I

19  don't know this case as well as your other case, but maybe the

20  lawyers, in their best legal judgment, thought, you know, this

21  is not a winner.  You are their client, and they wanted to get

22  the best possible outcome for you that they could get.

23        So I just encourage you to be open to that

24  possibility, that sometimes even though we feel very strongly

25  about our positions and about, you know, feeling that someone

MICHELE NARDONE, CSR -- Official Court Reporter

1  has wronged us, sometimes what an objective person, who is your

2  lawyer, can help you figure out is whether maybe you have been

3  looking at it the right way.  I'm not making any judgment about

4  that one way or the other, but I would just encourage you to

5  think about that a little bit.

6          So how about April -- what's the first week in April?

7          THE CLERK:  3rd.

8          THE COURT:  April 3rd, and if for some reason you feel

9  like you are getting close and you haven't gotten anybody by

10  then, you just let me know, and we will see if you need some

11  extra time.  Does that sound good?

12          MR. PIMENTAL:  Can I ask a question?

13          THE COURT:  Sure.

14          MR. PIMENTAL:  Because I don't know how this works,

15  especially with the class action lawsuit.  You know, I gave you

16  some information because I didn't know what you knew and what

17  you didn't know; and, you know, I don't have access to that

18  like PACER case and I don't know if my lawyers told, I guess,

19  Judge Weinstein or Judge Levy, I don't know if they mentioned

20  that either, because I gave you the information, I guess would

21  you be able to do -- to say that this doesn't have merit and I

22  shouldn't even waste my time trying to find a lawyer, or how

23  does that work?

24          THE COURT:  So I know what you are asking.  You know,

25  we really can't do that.  We can't give you legal advice.

MICHELE NARDONE, CSR -- Official Court Reporter

Pimental v. Delta

1    Sometimes we have, you know, premotion conferences

2  here.  I don't generally do it with people who are representing

3  themselves, but we have premotion conferences because, say, the

4  lawyers on the other side will submit -- they say they want to

5  make a motion; and sometimes I will give them what my

6  preliminary sense is, just so they can decide whether or not

7  they want to use their time by making that motion.

8    So but I can't give you legal advice, and I know

9  that's difficult for people.  I mean, I think you can check

10  with the pro se office.  I think you seem to know them pretty

11  well.  Right?

12    MR. PIMENTAL:  You know, it's funny, they are very

13  nice.  The lawyer, she is great and has a dog down there,

14  really cute.  It's her service animal.  You can play with it, a

15  nice environment; and they are always helpful.  They will

16  answer your questions, even in an e-mail, but like they don't

17  represent you.  So it's a fine line.  You can ask questions,

18  but it's not like they are going to be your lawyer or anything

19  like that.

20    So, Your Honor, I think the thing I was trying to

21  figure out was if, let's say, I can't find a lawyer, the way I

22  was reading some of the -- what was it, Supreme Court of

23  New York -- am I allowed to go to arbitration for this, whether

24  I'm by myself representing the class, or to get a lawyer for

25  the day to represent me in arbitration?  Is that an option?

Pimental v. Delta

1    THE COURT:  Well, I don't think there is an

2    enforceable arbitration clause in the contract.  Is there?

3    MR. KILLEEN:  There is not, Your Honor.

4    THE COURT:  See, that's the problem.  Arbitration, you

5    can only get arbitration if there is some clause in a contract

6    that forces Delta to go to arbitration.  So, I don't think

7    that's a possibility in this case.

8    You know, my recollection of this case was that

9    Delta's position was that you can't assert an overtime claim

10   under the New York Labor Law because you are what's called an

11   exempt employee under the Fair Labor Standards Act, which would

12   only entitle you to get that one-and-a-half times the minimum

13   wage overtime rate, which -- correct me if I'm wrong -- I think

14   you received.  Also, because you earned more than New York's

15   minimum wage, you wouldn't be entitled to spread your hours of

16   pay.  I believe that's what the defense's position is.

17   But I don't want to -- do I have that about right?

18   MR. KILLEEN:  You do, Your Honor.

19   THE COURT:  Okay.  Now, whether or not that is

20   meritorious, I haven't looked at yet because I was waiting to

21   see if you could get a lawyer who could help you out with that.

22   But that might be a -- that's what their position is.  That

23   might be a bar to your case.

24   If it is, you know, I would -- I mean, I'm not making

25   a decision about it, but those are the sorts of things that a

1   lawyer would be able to tell you, and, you know, then you may

2   realize this isn't worth your time.  You have still got the

3   other case.

4           So just while I'm at it, there is something, you want

5   a preliminary injunction.  I can't do any of those things in

6   this case because you don't have standing because this is not a

7   class action, and I don't think you work at Delta any more.

8   Right?

9           MR. PIMENTAL:  Well, I don't.  However, I do go to

10  worker's comp hearings, and they may send me back to work soon

11  so -- because there is another issue involved.  So I can't say

12  that I'm going back yet.

13          THE COURT:  Okay.  But it's not a class action and so

14  that's -- I can't grant that motion.

15          So I think what we will do is just -- bottom line

16  here -- I think the next thing for us to do is to figure out

17  what's -- I'm going to ask defense counsel -- what's -- I know

18  I should know the answer to this, but I have gotten myself --

19  is there anything outstanding?

20          Are there any motions?  I know there is the proposed

21  motion to dismiss on the labor law case.  Discovery is not

22  done?

23          MR. KILLEEN:  No.  So, Your Honor, the motion to

24  dismiss in the wage-and-hour case is fully briefed.

25          THE COURT:  Right.

Pimental v. Delta

1     MR. KILLEEN:  Judge Weinstein at one point had

2  directed the parties to --

3     THE COURT:  Convert it to a summary judgment?

4     MR. KILLEEN:  -- convert it to a summary judgment.

5     THE COURT:  I'm not sure that I'm going to take that

6  same approach, because I don't think we have enough discovery.

7  We don't have any discovery, right?

8     MR. KILLEEN:  Not in that case, Your Honor.  It

9  involves a different position and different --

10     THE COURT:  So I have to look at that a little more

11  closely; but, to me, I don't think that's an approach that will

12  work for me.  But I think I'm just going to hold off on that

13  because I'm going to have some hope that Mr. Pimental can get

14  some -- can get a lawyer to give him some advice on that.

15     So does that work for you?

16     MR. KILLEEN:  Understood, Your Honor.

17     THE COURT:  Then just tell me what's left to do in

18  discovery on the other case.

19     MR. KILLEEN:  Your Honor, can I address one other

20  thing with the wage and hour, so we can close out wage and

21  hour?

22     THE COURT:  Yes.

23     MR. KILLEEN:  We had filed -- and I think you alluded

24  to it earlier, at least in terms of certain documents -- but

25  the proposed confidential settlement agreement has been

1   attached to —— and I forget which case.  It's been attached

2   twice now as an exhibit, but we filed a request to seal that

3   document.

4           THE COURT:  That will be sealed, yes.

5           MR. KILLEEN:  My apologies.  I forget the exact docket

6   number, but it also, in a filing yesterday, appeared as

7   Exhibit 1 in another filing.

8           THE COURT:  Is that from Mr. Pimental?

9           MR. KILLEEN:  Correct.

10          THE COURT:  So can you not do that anymore, file that?

11  It's not necessary to keep doing it.

12          MR. PIMENTAL:  I'm sorry.  File what exactly?

13          THE COURT:  The confidential settlement.

14          MR. PIMENTAL:  Oh, well, don't you usually have to

15  give it to the court, whether you signed it or not?

16          THE COURT:  I think you have now given it to me about

17  16 times.  So you don't have to do it anymore.

18          MR. PIMENTAL:  Sure.

19          THE COURT:  All right.  Okay.  So that's sealed.

20          MR. KILLEEN:  Yes, and I think the wage and hour ——

21          THE COURT:  I think we are done with that one.

22          MR. KILLEEN:  Yes.

23          THE COURT:  Then there is discovery still to be done

24  on this other case.  Have you done your deposition yet?

25          MR. PIMENTAL:  No, Your Honor, but can I just ask one

Pimental v. Delta

1   question about the wage and hour?

2           THE COURT:  Sure.

3           MR. PIMENTAL:  Okay.  So my question is:  Is it

4   possible to go to mediation for that, or how would you initiate

5   that?

6           THE COURT:  Do you want to?

7           MR. KILLEEN:  You would ask us if we want to engage in

8   mediation.  I would represent at this time I don't think my

9   client is willing to, but I can raise that after this

10  conference.

11          THE COURT:  Yes.  They have got to talk to their

12  client too.  All right.  So that's something that you will talk

13  to each other about.

14          Did you have your deposition yet?

15          MR. PIMENTAL:  No, Your Honor.  Can I just ask a

16  follow-up, because it was something still in the same spirit of

17  that question.

18          THE COURT:  Sure.

19          MR. PIMENTAL:  So I guess the mediation thing, when I

20  would get a lawyer, they would probably engage with them and

21  try to work that out.  That would be possible.

22          My question is now:  Originally this originated in

23  state court.  So let's say I can't find a lawyer or let's say

24  whatever the case would be, and it would just be my claim.

25          Can this court send that back to state court?

Pimental v. Delta

1    THE COURT:  Why is it here, diversity?

2    MR. KILLEEN:  Which matter, Your Honor?

3    THE COURT:  The wage and hour.

4    MR. KILLEEN:  It is diversity, and alleged damages are

5  over $75,000.

6    THE COURT:  I see.

7    MR. KILLEEN:  I'm sorry.  It is under -- it's also

8  under CAFA.

9    THE COURT:  Is it FLSA?

10    MR. KILLEEN:  It is not.  It is -- I'm trying to

11  remember now.  Just New York Labor Law.

12    It was removed under -- with respect to the individual

13  and under CAFA.  So CAFA now, depending on whether or not

14  Mr. Pimental is represented.

15    THE COURT:  But if it were just him?

16    MR. KILLEEN:  I believe the way the claims are

17  written, it's still over $75,000, Your Honor.

18    THE COURT:  All right.  The other thing, you know, if

19  it gets sent back to state court you are just starting all over

20  again.  I don't know why you would want to do that.

21    MR. PIMENTAL:  Do you want an answer?

22    THE COURT:  Not really, because I think you are going

23  to say something unflattering.  Okay.

24    So we have Mr. Pimental's deposition to still do.

25  What else do we still have to do, discoverywise?

Pimental v. Delta

1    MR. KILLEEN:  So, Your Honor, under Judge Orenstein's

2  order, Mr. Pimental had until Monday to provide the narrative,

3  identify which out of the 1200-plus RFAs he wanted us to

4  respond to, which outstanding discovery requests he felt that

5  our prior responses to were deficient, what additional

6  documents he would want, and identify witnesses that would

7  support his narrative.

8    THE COURT:  By this past Monday or coming Monday?

9    MR. KILLEEN:  February 4.

10    THE COURT:  Okay.

11    MR. KILLEEN:  It's our position -- and I believe we

12  still need to go through Judge Orenstein for this -- but that

13  Mr. Pimental has not complied with that.

14    THE COURT:  Are you scheduled to see Judge Orenstein

15  again at any time soon?

16    MR. KILLEEN:  The status conference is scheduled in

17  March, after -- so we were supposed to receive all that by

18  February 4.  By March 6 we are supposed to respond.

19    THE COURT:  So just if Mr. Pimental were to give that

20  to you next week, would that be acceptable?

21    MR. KILLEEN:  Yes, Your Honor.

22    THE COURT:  Okay.  So can you do that, please?  You

23  are going to give your narrative, and then whatever else Judge

24  Orenstein wanted you to do.  I will call him to let him know

25  that I extended the deadline.

Pimental v. Delta

1          Shall we make it next Friday?

2          MR. KILLEEN:  That's fine, Your Honor.

3          THE COURT:  Okay.  You can do that.  Okay.  So what's

4     the date of that?

5          THE CLERK:  The 15th.

6          THE COURT:  So by February 15 you are going to provide

7     the narrative; and let's just make the record crystal clear so

8     I remember, and so it's clear to Mr. Pimental.  It's going to

9     be his narrative, and he has a number of things that he feels

10    were insufficiently answered.  Correct?

11         MR. KILLEEN:  Yes, Your Honor.  It's Docket 97, for

12    reference purposes.

13         THE COURT:  Okay.  So and, you know, just for

14    everybody's -- so everybody can keep it straight, it doesn't

15    have to be 500 pages long.  It should be, you know, you want to

16    get your point across, and you don't have to -- I know you have

17    strong feelings about things; but rather than, you know, saying

18    mean things about the other side, just tell them what you think

19    is inappropriate, and that enables them to figure out if they

20    can supplement whatever they have given or to say we disagree

21    with you.  So that, so February 15 for that.

22         So the dates that we have fixed right now, at least as

23    far as I'm concerned, you are going to, by that April 3rd date,

24    you are going to let us know about your progress with getting a

25    lawyer.  I suppose you are going to speak to the lawyer that

Pimental v. Delta

1  only wanted to go to the Southern District, about coming here.

2  It's not that far, you know.  So it's really right across the

3  river.

4          So if he is not admitted, there are steps that -- or

5  she; I don't even know if the person is male or female -- but

6  you will let us know by April 3rd.  If it comes before that,

7  that's even better; you will just post a letter.

8          You are going to take care of the address issue so I

9  can make sure that you get everything that you are supposed to

10  get.

11          Is there anything else from your side that we need to

12  do?

13          MR. KILLEEN:  To that end, Your Honor, we have

14  e-mailed Mr. Pimental our production as well as his own

15  production numerous times.  We have yet to get a notification.

16  The way our secure file transfer works, we get a notification

17  when someone downloads those documents.  They haven't

18  downloaded yet; and, like the court, all of our mailings to

19  Mr. Pimental have been returned undeliverable.

20          THE COURT:  Have you gotten their e-mails,

21  Mr. Pimental?

22          MR. PIMENTAL:  I have.

23          THE COURT:  Have you -- they have to know that you

24  have gotten it.  So have you down -- so I mean, I'm the least

25  technologically advanced person that there is.  So just -- I

Pimental v. Delta

1   think they are sending it to you so you can have it.

2          When you say "download," do you mean he can still look

3   at it on his computer?

4          MR. KILLEEN:  Yes, Your Honor.  It's just because of

5   the size, at the last conference we said we would provide him

6   his own production because he said his past attorney hadn't

7   handed over the files.

8          THE COURT:  I see.  So you have got all that?

9          MR. PIMENTAL:  Yes, and I downloaded it.  I don't know

10  why it doesn't show it was downloaded.

11         THE COURT:  But now we have established that you have.

12  So that's good.  So that's progress.

13         MR. KILLEEN:  Because that's supposed to facilitate

14  the meet-and-confer process under the order from Judge

15  Orenstein.

16         THE COURT:  It just makes everything easier.  All

17  right.  So I think we have made some good progress here.

18         And let's finish the discovery so we can move on to

19  the dispositive motion stage.  If you still feel that after

20  discovery is done you want to file a motion for summary

21  judgment, you will do that, following my individual rules.  I

22  have a page limit and all of that.  But we will keep moving

23  forward, and -- have I given you any -- every opportunity you

24  need to say something?

25         MR. KILLEEN:  There are two, I think, open items.

MICHELE NARDONE, CSR -- Official Court Reporter

1     Like you, Your Honor, I have the list of --

2          THE COURT:  That's okay.

3          MR. KILLEEN:  One, I understand Mr. Pimental filed a

4     motion to compel in this case, for a privilege log.

5          THE COURT:  Oh, I forgot about that.

6          MR. KILLEEN:  We are putting that together.

7          THE COURT:  Great.

8          MR. KILLEEN:  Mr. Pimental also served us with a

9     subpoena for the documents that he believes he should receive

10     through the -- I think that was his attempt at complying with

11     the order.

12          THE COURT:  Don't do that.  No subpoenas.  They will

13     follow the discovery order; and, if there is a problem with

14     that, you take it up with Judge Orenstein.  I don't think we

15     need to be -- I don't think it's a proper use of the subpoena.

16          MR. KILLEEN:  We didn't either, that's why I wanted to

17     present it here.

18          As part of that subpoena, he also asked permission to

19     appear on Delta's premises in, I believe, human resources, on

20     February 15, which we would object to as well.

21          THE COURT:  Yes.  I don't know anything about that.

22     That's really not the proper subject of a subpoena.

23          Is there some reason why he can't go to Delta's human

24     resources?  I'm not familiar.

25          MR. KILLEEN:  To obtain the documents produced in this

Pimental v. Delta

1  case.

2      THE COURT:  Oh, I see.  I see.

3      No, no, no.  You can't do that because Delta is

4  represented by a lawyer.  That's who you work through.  Okay?

5  That's how that works.  That's why they retain a lawyer, so the

6  lawyer can handle all of that.  Okay.  Good?

7      MR. KILLEEN:  I have, I think, two more, Your Honor.

8      THE COURT:  That's okay.

9      MR. KILLEEN:  Amongst the motions for reconsideration

10  and everything else, were, I believe, still motions to deem

11  RFAs admitted.  Again, they should be covered by the prior

12  order.  I just want to make clear, because there have been

13  motions to compel again, that we are not required to respond to

14  those RFAs.

15      THE COURT:  No.

16      MR. KILLEEN:  Okay.  Now I have two more.

17      THE COURT:  Okay.

18      MR. KILLEEN:  In communications with us, including

19  this morning, Mr. Pimental has copied a Ms. Erica Lee.  I

20  believe she is either a current or former flight attendant, who

21  has provided him with a declaration in this case.

22      I just want to make clear, if he copies her, that's

23  fine.  We are not going to respond to include Ms. Lee.

24      THE COURT:  That's okay.  That's fine.

25      MR. KILLEEN:  Finally, based on the conference and how

Pimental v. Delta

1   it's gone -- I anticipate what Your Honor will say -- we have

2   been anticipating, in light of Mr. Pimental's disregard for the

3   prior orders, a Rule 41(b) motion.

4         In light of the fact that he now has until next Friday

5   to try to comply with that discovery order, we will hold off on

6   any such motion.

7         THE COURT:  I think so.  I think we all understand

8   each other pretty well here.  Really, just try to -- you've got

9   to play along with -- you have to follow the rules, which are

10  not meant to make things harder for you.  They are meant to

11  make things move more efficiently, and that's just the way it

12  works.

13        It's the hard thing about representing yourself.  I

14  mean, it's a little bit like having to perform surgery without

15  a medical degree, and it's hard.

16        But you have got to follow the rules.  We make

17  everybody follow the rules, and there are good reasons for

18  them.  So you really must do that.

19        I like to tell people who come into my courtroom, this

20  is a drama-free zone.  It's -- I attribute to everybody the

21  best intentions, and I -- but in return I expect people to

22  comply with these rules, which are designed to make the

23  litigation flow efficiently.

24        So I'm not concerned about that.  I think Mr. Pimental

25  understands me very well.

MICHELE NARDONE, CSR -- Official Court Reporter

1    So I think we are done.  Yes?

2    MR. PIMENTAL:  Your Honor, okay.  What I have been

3    trying to address with Judge Orenstein and I guess now with

4    Your Honor, they are very nice when we are here, so very

5    professional, nice; but I'm not saying it's them, because it's

6    probably the client.  All right.

7    In the past -- maybe there was one e-mail recently

8    after Judge Orenstein's January 4 hearing -- but they were not

9    answering any of my e-mails after I was without a lawyer.  They

10   do not communicate.  They do not send documents.

11   So because they are being very recalcitrant and not

12   cooperating with the process, this is why there have been

13   problems and I have had to file motions.  I --

14   THE COURT:  What is it that you want that you don't

15   have?

16   MR. PIMENTAL:  Everything.  This is why we are where

17   we are.

18   THE COURT:  Well, see, I have now, you know, I have

19   read some of the e-mails that you sent.  I mean, there is a

20   saying that you get more flies with honey than with vinegar;

21   and they are not -- you know, and I mean this in the nicest

22   possible way -- but you are not always correct about the legal

23   premise that you assert.

24   So, as I said before, I'm not always going to agree

25   with you, and Judge Orenstein is not always going to agree with

1  you; and that's just a fact of life in litigation.  So, for

2  example, they sent you your previous production that you said

3  you didn't get from your lawyer, as well as their discovery.

4  They have to know that you got it.  So now they do.

5          So I'm just telling you to back it down a little bit.

6  You don't have to -- not every -- I'm sure you have other

7  things to do; and so but when you file something that's 700

8  pages long, I'm not going to read it, because it's not -- I

9  mean, I have read a lot of the things that you have submitted,

10  but no judge is going to read that.

11          So I mean I'm glad we had the chance to talk about

12  these things, but what I said before I'm quite serious about.

13  Not everything that happens in a case is meant to, you know,

14  meant to be unfair to you or anything like that.  I'm concerned

15  about your case.  I want -- but I want it to proceed in an

16  orderly fashion, and the only way we can do that is by adhering

17  to the riles.

18          I'm sure that you are going to do that.  I'm going

19  to -- I will give you that -- you have that February 15 date.

20  You have got -- your mission is to file your narrative and to

21  let them know clearly and succinctly what it is that you feel

22  is lacking in whatever they have given you before.  That's your

23  job before February 15.

24          Then we have to take care of the rest of discovery,

25  and then we will talk about setting a schedule for if there are

1  dispositive motions.  What I mean by that, if there are summary

2  judgment on either side.

3       Now, I do have another matter that I have to attend

4  to.  So I think we have -- I think we are pretty clear.  I feel

5  clear.  So the job for you before the 15th is to file that

6  narrative, let them know what else you want; and I think we are

7  good.  Okay?

8       MR. PIMENTAL:  One last question, Your Honor?

9       THE COURT:  Surely.

10       MR. PIMENTAL:  So I went to the pro se office here

11  at EDNY, but there is no template to do a narrative.  So

12  nobody knows because it's not typical.  So I don't even know

13  what to do.

14       THE COURT:  All you -- I mean, I don't generally do

15  discovery, so, but it's just a -- like telling a story about

16  what are the facts underlying your claim.  I will tell you

17  this, you are good at writing things.  So if you were telling

18  somebody this story of what happened to you, I think that's

19  what Judge Orenstein wants.

20       Does that sounds right to you?

21       MR. KILLEEN:  Yes.  And, Mr. Pimental, I will give you

22  a copy of the order too.

23       THE COURT:  Yes.  Just do exactly what he says.  It

24  sounds like you know better than anybody, so.

25       MR. PIMENTAL:  And then one last thing is because I

MICHELE NARDONE, CSR -- Official Court Reporter

1  disagree with Your Honor -- sorry -- I would like leave to do a

2  writ of mandamus.

3          THE COURT:  It's not going to work.  You mean you want

4  me to recuse myself or something?

5          MR. PIMENTAL:  No, not you.  Yeah, to get Judge

6  Orenstein to disqualify himself.

7          THE COURT:  He is not going to; and, you know, you are

8  making me a little bit mad.  You can't do that.

9          Just because you disagree with Judge Orenstein does

10  not mean that you can be disrespectful to him.  This is a place

11  of respect.  I have told you before that I don't want to hear

12  any more of those things.  Judge Orenstein is a smart,

13  hard-working judge, who is doing his best to give you a fair

14  shake.

15          No more.  No more.  You know, I am a patient person,

16  and -- but just because you don't like him -- if we did that

17  with -- if we let people say, I don't really like this judge

18  that much, it would be chaos around here.  That's not going to

19  happen.  It's not worth pursuing.

20          So I hope you can accept that you are not going to win

21  that one.  Well, then you are distracting yourself from the

22  merits of your case.  That's a side road that is -- it's a

23  complete dead end to me.

24          So, you know, I can't make you focus on the issues;

25  but I'm telling you, in the strongest possible terms, that I

1    don't look kindly on that, and no other judge would either.  So

2    that's the end of that.

3         Okay.  So February 15 you are going to file what it is

4    that -- the narrative.  You have got a copy of the order, and

5    then we will see what happens.  All right.

6         Thanks so much.

7         MR. KILLEEN:  Thank you, Your Honor.

8         (End of proceedings.)

9                              o O o

10

11   Certified to be a true and accurate transcript.
     /s/ Michele Nardone
12   MICHELE NARDONE, CSR -- Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25